HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GARY MANGUM, et al.,

    Plaintiffs,

  v.

RENTON SCHOOL DISTRICT,

    Defendant.

CASE NO. C10-907RAJ

PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the court on Plaintiffs' motion (Dkt. # 14) to reconsider the court's January 21 order denying their motion for a temporary restraining order. The court heard from the parties at a January 27, 2011 oral argument. For the reasons stated herein, the court GRANTS the motion, and enters a preliminary injunction.

Because this order "grant[s] or den[ies] an interlocutory injunction," the court must make findings and fact and conclusions of law. Fed. R. Civ. P. 52(a)(2). The court includes its findings and conclusions in this order, which serves as a memorandum of the court's decision. Fed. R. Civ. P. 52(a)(1) (permitting findings and conclusions within "an opinion or a memorandum of decision"); *see also FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir. 1982) (noting that explicit factual findings are unnecessary).

ORDER – 1

## II. BACKGROUND

Plaintiffs Gary and Elizabeth Mangum are the parents of I.M., a 15-year-old boy. From elementary school until last week, the student was enrolled in the Renton School District's H.O.M.E. program. The H.O.M.E. program is a collaboration between the District and parents who wish to educate their children at home. The District provides assistance in ensuring that the student's education meets state requirements, and also provides limited classroom instruction as well as extracurricular activities.

Beginning in 2007, the District and the Mangums have disputed whether I.M. should receive special education services. There is no dispute that several professional evaluators have determined that I.M. has serious deficiencies in some areas of mathematical expression and written expression. In late 2007, the District determined that the student did not have a learning disability that entitled him to special education services, although it did agree to a variety of accommodations to assist I.M.

Not satisfied with the District's determination, the Mangums exercised their rights under the federal Individuals with Disabilities Education Act ("IDEA") and Washington regulations implementing the IDEA. They requested an independent evaluation of their son. For reasons the court need not address in this order, the independent evaluation did not occur until late 2009, and the District was not informed of the results of that evaluation until at least January 2010. The evaluator determined that I.M. had IDEA-qualifying learning disabilities, and recommended a variety of educational accommodations. The District agreed to further evaluate I.M., but the Mangums were unsatisfied with that response, believing that no further evaluation was necessary.

The Mangums exercised their right to contest the District's actions in a due process hearing before a state administrative law judge ("ALJ"). After a June 2010 hearing, the ALJ determined that the Mangums had not timely requested the due process hearing, because more than two years had passed between the District's last relevant act and the request for the hearing. The ALJ accordingly dismissed the Mangums' claim

ORDER – 2

without addressing the merits of their challenge to the District's determination that I.M. did not qualify for IDEA special education services.

In October 2010, the Mangums sued in this court. To date, neither party has called upon the court to address the merits of their dispute. Neither party should construe anything in this order as expressing the court's view on the merits of that dispute.

The motion before the court presents a different dispute. On January 19, 2011, the District notified the Mangums by email that effective January 21, 2011 (the end of the semester), I.M. would no longer be enrolled in the H.O.M.E. program. The email notification enumerates ways in which the Mangums failed to satisfy their obligations within the H.O.M.E. program. For example, the District claims that the Mangums failed to submit required lesson plans and monthly progress reports, and failed to satisfy various on-campus commitments. Nothing in the email or anywhere else in the record suggests that I.M. has violated any District rule or engaged in any misconduct.

On January 20, the Mangums moved for a temporary restraining order to prohibit the District from excluding I.M. from the H.O.M.E. program. The court denied that motion on January 21, noting that the Mangums (who do not have counsel) had presented no evidence to support the motion. On January 24, the court received the Mangums' motion for reconsideration, which for the first time included evidence and information on the timing of the District's action. The court ordered the District to respond by the next day in advance of a January 27 oral argument. The court treats the Mangum's motion for reconsideration as a renewed motion for injunctive relief, thus obviating the need to discuss the standard applicable to motions for reconsideration. Local Rules W.D. Wash. CR 7(h).

### III.  ANALYSIS

The Mangums invoke what is commonly known as the "stay-put provision" of the IDEA. It provides as follows:

ORDER – 3

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). The "section" to which the stay-put provision refers provides for a variety of proceedings, including administrative proceedings within the school, due process hearings before state administrative law judges, and a civil action in state or federal court. 20 U.S.C. § 1415. The exceptions provided in subsection 1415(k) permit a school to change a student's educational placement only when the student has violated a school code of conduct, and strict procedures are followed for changing his placement for in light of that violation.

Taken literally, the stay-put provision amounts to an automatic injunction against any change in a student's "current educational placement" while any of the numerous § 1415 proceedings are resolved. The Mangums seek an injunction from this court to prevent the District from changing I.M.'s educational placement by excluding him from the H.O.M.E. program.

The District argues that the stay-put provision does not apply. It concedes that the Mangums' lawsuit in this court is a "proceeding" within the meaning of the stay-put provision. It believes that the "educational placement" to which the statute refers is an IDEA individualized education program ("IEP"). *See* 20 U.S.C. § 1414(d)(1)(A) (defining IEP). A school need only formulate an IEP if it determines that a student is disabled within the meaning of the IDEA. In this case, the District has never determined that I.M. is disabled, and thus has never developed an IEP. Because I.M. has no IEP, the District contends it is not bound by the stay-put provision.

Before considering the District's argument, the court notes that it is the District's sole argument. If the stay-put provision applies, the District does not argue that it is

ORDER – 4

permitted to exclude I.M. from the H.O.M.E. program. It does not argue that the Mangums' alleged failure to satisfy their obligations to the H.O.M.E. program is a sufficient reason for changing I.M.'s educational placement if the stay-put provision binds the District. It does not argue that I.M. has engaged in any of the conduct that the IDEA explicitly recognizes as a basis for a change in placement notwithstanding the stay-put provision.

Given the limited nature of the District's argument, the court's task in resolving the motion before it is simplified. The only relevant facts are undisputed. The District has removed I.M. from the H.O.M.E. program. The court makes no finding as to its motivations for doing so. The court assumes, solely for purposes of this motion, that the District has accurately described the Mangums' failure satisfy their obligations to the H.O.M.E. program, and that those failures would justify I.M.'s exclusion from the program but for the stay-put provision.

The disputed question before the court is therefore a legal one: is the H.O.M.E. program I.M.'s "current educational placement" for purposes of invoking the stay-put provision? The District insists that it is not, and contends that only a placement made pursuant to an IEP brings a student within the ambit of the stay-put provision. In support of that contention, the District cites only two cases. In the first, *Johnson v. Special Educ. Hearing Office*, the court remarked that "[f]or the purpose of § 1415(j)'s 'stay put' provision, the current educational placement is *typically* the placement described in the child's most recently implemented IEP." 287 F.3d 1176, 1180 (9th Cir. 2002) (emphasis added). The court's survey of case law confirms the *Johnson* court's observation – most plaintiffs invoking the stay-put provision do so on behalf of a student who is subject to an IEP. For many reasons, however, there is no reason to interpret *Johnson* to *require* an IEP before invoking the stay-put provision.

To begin with, the student relying on the stay-put provision in *Johnson* did not have an IEP. The student was subject to an individualized family services plan ("IFSP"),

ORDER – 5

which the IDEA requires for qualifying preschool students. *Johnson*, 287 F.3d at 1178; *see also* 20 U.S.C. § 1436 (defining IFSP). Although the student and the school district had attempted to develop an IEP, they were unable to do so. *Johnson*, 287 F.3d at 1179. Although the student in *Johnson* was unsuccessful in his attempt to invoke the stay-put provision, no one suggested that the lack of an IEP made the statute inapplicable to him. *Id.* at 1180 (accepting parties' agreement that IFSP was the "current educational placement").

Moreover, in observing that the "current educational placement is typically the placement described" in an IEP, the *Johnson* court cited *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990). *Thomas* squarely rejects the notion that only a placement made pursuant to an IEP qualifies as an "educational placement":

> In the section of the Act which sets out the various procedural safeguards, Congress specifically uses the term "free appropriate education" but does not refer to "individualized education program." Instead, the Act refers to the "then current educational placement" of the child. Had Congress intended a prospective IEP to govern the Act's stayput provision, as opposed to an operational placement, it could have employed the term "individualized educational program" which it had already defined. Since it did not, the term "then current educational placement" must be accorded, its plain meaning. Because the term connotes preservation of the status quo, it refers to the operative placement actually functioning at the time the dispute first arises. If an IEP has been implemented, then that program's placement will be the one subject to the stayput provision. And where, as here, the dispute arises before any IEP has been implemented, the "current educational placement" will be the operative placement under which the child is actually receiving instruction at the time the dispute arises. In order to comply with the stayput provision, then, the school was required to continue providing [the student] with five hours of home education per week until the dispute was resolved.

918 F.2d at 625-26. *Johnson* appears to adopt the meaning that *Thomas* ascribes to "educational placement."

*Johnson* did not purport to exhaustively define "current educational placement," as a later Ninth Circuit panel acknowledged in *N.D. v. State of Hawaii Dep't of Educ.*, 600

ORDER – 6

F.3d 1104, 1114 (9th Cir. 2010), the other case that the District cited. The *N.D.* court defined "educational placement" as follows:

> We hold that "educational placement" means the general educational program of the student. More specifically, we conclude that under the IDEA a change in educational placement relates to whether the student is moved from one type of program – i.e., regular class – to another type – i.e., home instruction. A change in the educational placement can also result when there is a significant change in the student's program even if the student remains in the same setting.

600 F.3d at 1116. The *N.D.* court imposed no requirement that the student be subject to an IEP. To be sure, the students in *N.D.* were subject to IEPs, and the court recognized that a placement pursuant to an IEP, if it exists, is a student's current educational placement. *Id.* at 1114. Nonetheless, the court did not confine its definition of educational placement to placements made in accordance with an IEP.

Both *N.D.* and one of the cases it cited, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 902 (9th Cir. 2009) stated that a "current educational placement" is the one "set forth in the child's last implemented IEP." *N.D.*, 600 F.3d at 1114 (quoting *L.M.*, 556 F.3d at 902). As with *Johnson*, however, the court finds no basis to conclude that those courts *required* an IEP. In *N.D.*, the court had no occasion to consider a student without an IEP. In *L.M.*, the court considered a student who lacked an IEP or other "placement" because rather than enter school in the District, the student's parents unilaterally enrolled him in private school. 556 F.3d at 911. The court concluded that this was not a "placement" to which the stay-put provision applied. *Id.* at 913. It did not suggest, however, that the student's lack of an IEP was determinative. Indeed, the *L.M.* court cited the *Thomas* court's definition of "educational placement," a definition that explicitly does not require an IEP. 556 F.3d at 911. The *L.M.* court also cited *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996), wherein the Third Circuit followed the *Thomas* court's lead and held that an "educational placement" need not be a placement via an IEP.

ORDER – 7

1    In this case, the Mangums sought a determination that their child was disabled, a
2 determination that would have led to the development of an IEP.  The District determined
3 that I.M. was not disabled.  In so doing, they "placed" him in the H.O.M.E. program.
4 The Mangums chose that program, of course, but their only choices within the District
5 were to either enroll in the H.O.M.E. program or enroll in one of the District's traditional
6 schools.  That they had some choice in the matter does not prevent the court from finding
7 that the H.O.M.E. program is the I.M.'s educational placement.

8    There is authority supporting the District's position, although the District did not
9 cite it.  In at least two cases, courts have suggested that an IEP is a prerequisite to
10 invoking the stay-put provision.  *Cordrey v. Euckert*, 917 F.2d 1460, 1468 (6th Cir. 1990)
11 ("The stay-put provision applies only to services included in the child's IEP."); *J.D. v.*
12 *Manatee County Sch. Bd.*, 340 F. Supp. 2d 1316, 1319 (M.D. Fla. 2004) (following
13 *Cordrey*).  *Cordrey*, moreover, cited Ninth Circuit authority predating the authority cited
14 above.  917 F.2d at 1468 (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314
15 (9th Cir. 1987)).

16    In *Gregory K.*, the court declined to apply the stay-put provision to a student who
17 was receiving individual tutoring beyond the scope of his IEP.  It ruled that "[t]he 'status
18 quo' provisions of the Act apply only to special education received pursuant to an IEP."
19 *Gregory K.*, 811 F.2d at 1314.  While that statement, taken in isolation, appears to
20 support the District's position, the remainder of the case reveals otherwise.  In *Gregory*
21 *K.*, the school district developed an IEP that placed the student in a separate special
22 education class.  *Id.* at 1309.  His parents were unsatisfied with the class, so they chose to
23 place him in regular classes, thus declining to follow the IEP.  *Id.*  After several years of
24 regular classes, a school district employee began providing the student with tutoring
25 while the parents declined the district's offer of special education.  *Id.*  When the
26 employee resigned, the district offered a new tutor.  *Id.* at 1309-10.  The parents sued,
27 invoking the stay-put provision and contending that it entitled their son to receive
28 ORDER – 8

tutoring from the same person, even if she had to be paid as a private contractor. *Id.* at 1310. The court rejected that interpretation of the stay-put provision. *Id.* at 1313-14. In this court's view, the court in *Gregory K.* did not impose a requirement that a student have an IEP before invoking the stay-put provision. The court had no occasion to impose such a requirement, because the student had an IEP. The court merely concluded that services provided outside the scope of an existing IEP were not the student's "placement" for purposes of invoking the stay-put provision.

    For the reasons stated above, the court holds that I.M.'s "current educational placement" is his enrollment in the H.O.M.E. program, and that the District's decision to exclude him from that program is a change in his educational placement in violation of the stay-put provision.

    The court's ruling is grounded in Ninth Circuit case law. The court notes, however, that the ruling is consistent with the purposes of the IDEA. There is no question that the stay-put provision is intended to preserve the status quo while a student pursues IDEA relief. A student who has been deemed disabled but challenges some aspect of his IEP is within the scope of the provision, as the District readily concedes. There is no obvious reason that Congress would exclude students who seek to force the District to find them disabled, thus requiring the school to develop an IEP. Those students have the same right to invoke IDEA's procedural safeguards, including administrative proceedings and a civil action in a competent court. If Congress had intended to deny those students the protection of the stay-put provision, the court expects it would have made its intention clear. Finally, courts have noted that Congress was additionally concerned about the prospect of retaliation against students who invoke the IDEA. *E.g.*, *Johnson*, 287 F.3d at 1181 (noting that the stay-put provision "protect[s] children from any retaliatory action by the [education] agency"). The court does not suggest that the District's exclusion of I.M. from the H.O.M.E. program was retaliatory. The stay-put provision does not require the court to determine if the District had a

ORDER – 9

retaliatory motive. Instead, it prevents even the possibility of retaliation by taking away the District's right to change a student's educational placement. There is no apparent reason that students with an IEP would be protected from retaliation whereas a student seeking an IEP would not be.

Before concluding, the court assumes that the mandatory nature of the stay-put provision obviates the need to perform the traditional analysis applicable under Fed. R. Civ. P. 65 to a request for injunctive relief. *See*, *e.g.*, *Alliance for the Wild Rockies ("Alliance") v. Cottrell*, 622 F.3d 1025 (9th Cir. 2010), *amended* in not-yet-published opinion Jan. 25, 2011. Courts have offered varying views on this issue. *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009) (declining to perform traditional analysis); *Johnson*, 287 F.3d at 1180 (requiring traditional analysis where plaintiff sought to enjoin an administrative stay-put order); *N.D.*, 600 F.3d at 1112 (distinguishing *Joshua A.*).

The court's ruling would be no different if it applied the traditional injunction analysis. Because the relevant facts are undisputed, the court's legal ruling means that the Mangums have already succeed on the merits, where the merits are limited to the question of the applicability of the stay-put provision. There is little question that irreparable injury could result if I.M. is removed from the H.O.M.E. program. Among other things, a psychologist has already concluded that he cannot thrive in a traditional classroom environment. The District does not argue otherwise. The balance of hardships favors I.M. The District conceded at oral argument that keeping I.M. in the H.O.M.E. program would cause no financial harm. The court acknowledges the possibility of harm arising from depriving the District of the right to manage its H.O.M.E. program as it sees fit, but on the record before the court, that harm is not sufficient to tilt the balance of hardships in the District's favor. To the extent that the public interest is implicated here, the court finds that it favors preserving I.M.'s educational placement pending the outcome of these proceedings.

ORDER – 10

Because the court does not apply a traditional injunction analysis, it does not believe that the bond requirement of Fed. R. Civ. P. 65(c) applies.  If it did apply, however, the court would decline to require the Mangums to post bond.  The District has admitted that it faces no financial consequences from this injunction.

Before concluding, the court explains that it has decided to enter a preliminary injunction, rather than a temporary restraining order.  The court acknowledges that it required the District to respond to the Mangum's motion very quickly.  Under ordinary circumstances, the court would issue a temporary restraining order of limited duration, order the District to show cause why a preliminary injunction should not issue, and set a briefing schedule for a show cause response.  At oral argument, however, the District stated that it relied solely on its argument that the stay-put provision does not apply to I.M. because he has no IEP.  It stated that it did not believe it needed more time to develop that argument.  The court thus finds no need for an additional preliminary injunction proceeding.  In recognition of the circumstances under which it enters this injunction, however, the court emphasizes that the District is free to seek modification or dissolution of the injunction.  If it does so, the court will not fault the District if it presents evidence or argument that it did not present in its response to the instant motion.

## IV.  CONCLUSION AND PRELIMINARY INJUNCTION

For the reasons previously stated, the court GRANTS Plaintiffs' motion (Dkt. # 14) and enters a preliminary injunction as follows:

The Renton School District is enjoined, until further order of the court, from excluding I.M. from participation in its H.O.M.E. program.

DATED this 27th day of January, 2011.

The Honorable Richard A. Jones
United States District Judge

ORDER – 11