HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GARY MANGUM, et al.,

        Plaintiffs,

      v.

RENTON SCHOOL DISTRICT,

        Defendant.

CASE NO. C10-1607RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the motion of Defendant Renton School District (the "District") for summary judgment.  Dkt. # 62.  For the reasons stated below, the court GRANTS the motion in part and DENIES it in part.  The bench trial in this case will begin on March 18, 2013, and the parties shall comply with the pretrial deadlines stated at the conclusion of this order.

## II.  BACKGROUND

Plaintiffs Gary and Elizabeth Mangum, proceeding pro se, contend that Defendant Renton School District (the "District") has failed to accommodate the disabilities of I.M, their minor son.  I.M. is a student in the District.  He was entering the second half of his tenth-grade year in January 2011.  The court assumes that he is currently in the twelfth grade, although there is no direct evidence as to his current placement in the District.

This case initially arose in the wake of a June 2010 due process hearing before an administrative law judge.  The ALJ rejected the Mangums' claims that the District had

ORDER – 1

erred in failing to accommodate their son's disabilities. The Mangums filed this suit soon thereafter.

In October 2011, the court issued an order granting the District's motion for summary judgment. Dkt. # 46. That ruling was fatal to the Mangums' claims invoking the Individuals with Disabilities Education Act (20 U.S.C. §§ 1400-82, "IDEA"). The court ruled that the Mangums had sued too late to bring an IDEA challenge to some of the District's actions, that the Mangums had not properly exhausted the administrative process with respect to other actions, and that the District had not violated the IDEA with respect to those few actions for which the Mangums had timely sued and properly exhausted their administrative remedies.

The October 2011 order also acknowledged that the Mangums had attempted to invoke Section 504 of the Rehabilitation Act (29 U.S.C. § 794), which prohibits disability discrimination in federally-funded programs. The court granted summary judgment in the District's favor as to one aspect of that claim. The court also acknowledged that the Mangums might have either a Section 504 claim that they had properly exhausted or a Section 504 claim that did not require exhaustion. It granted the Mangums leave to file an amended complaint.

In December 2011, the Mangums filed an amended complaint that invoked Section 504 as well as Title II of the Americans with Disabilities Act ("ADA") and the Washington Law Against Discrimination ("WLAD"). The District now asks for summary judgment against the Mangums' federal claims.

### III.   ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a

ORDER – 2

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.    Overview of the Interplay Between the IDEA, the Rehabilitation Act, and the ADA**

The IDEA provides disabled children and their parents with a comprehensive set of remedies designed to ensure that disabled children receive a "free appropriate public education."  20 U.S.C. § 1400(d)(1)(A).  Along with detailed requirements governing a school's obligation to identify students with disabilities and accommodate them, the IDEA provides a host of procedural protections that enable parents to mediate disputes with schools, to challenge school decisions in an administrative hearing if necessary, and to sue if they disagree with the decision following the hearing.  *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 871 (9th Cir. 2011).

Despite the IDEA's comprehensive scheme, Congress has chosen not to preempt the application of other federal laws that might bear on the rights of disabled children in an educational setting:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

ORDER – 3

Section 504 of the Rehabilitation Act, which Congress enacted before even the earliest version of the IDEA, is a generic bar on discrimination against the disabled in federally-funded programs:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  Whereas Section 504 does not expressly address federally-funded public schools, regulations implementing the statute provide education-specific protections, including the right to a "free appropriate public education."  *See*, *e.g.*, 34 C.F.R. § 104.33(a); *see generally* 29 C.F.R. Pt. 104.  Even though the Section 504 regulations and the IDEA use the same phrase to describe their central educational guarantee, they do not share precisely the same meaning.  *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008) ("FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not identical.").

Like Section 504, Title II of the ADA contains a generic prohibition on discrimination against the disabled:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Congress modeled this statute on Section 504.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).  It provides the same remedies as Section 504.  42 U.S.C. § 12133.  Unlike Section 504, the regulations that implement Title II of the ADA do not specifically address education, although they do not "apply a lesser standard" than either the Rehabilitation Act or the regulations that implement it.  28 C.F.R. § 35.103(a).  Given the similarity between Title II and Section 504, courts typically do not separately analyze claims arising under them.  *See Duvall*, 260 F.3d at 1135-36; *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)

ORDER – 4

("There is no significant difference in analysis of the rights and obligations created by the ADA and Rehabilitation Act."). This court will take the same approach, and focus on the Mangums' Section 504 claim.

**B.      The IDEA Exhaustion Requirement As it Applies to Rehabilitation Act Claims**

Although the IDEA does not preempt a Section 504 claim, a plaintiff who brings a Section 504 claim to win relief that is available via the IDEA must exhaust the IDEA's administrative remedies first. That conclusion flows directly from the text of the IDEA. 20 U.S.C. § 1415(l) ("[B]efore the filing of a civil action under such laws [including Section 504] seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."). The court addressed the exhaustion requirement as it applied to the Mangums' IDEA claims in the October 2011 order. The court will not repeat that analysis here. To summarize, it concluded that the Mangums failed to exhaust any IDEA claim based on conduct prior to April 2008 or after the ALJ's decision in July 2010. In the two-year window for which the Mangums arguably satisfied the exhaustion requirement, the court ruled that the Mangums had not provided any evidence of a violation of the law.

In *Payne*, the Ninth Circuit attempted to clarify when the IDEA mandates exhaustion of federal claim arising under another statute. Plaintiffs must exhaust Section 504 claims that expressly seek relief available via the IDEA, including claims seeking the cost of private school education and claims for prospective relief to change a student's educational placement. *Payne*, 653 F.3d at 875. More generally, however, the exhaustion requirement applies "where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of FAPE to provide the basis for the cause of action . . . ." *Id.* That general rule applies to a "claim for damages under § 504 of the

ORDER – 5

Rehabilitation Act . . . premised on a denial of a FAPE." *Id.* (right parenthesis omitted).
It is not enough to seek monetary damages, a plaintiff must seek "damages unrelated to
the deprivation of a FAPE." *Id.* at 877.

**C.     The Mangums Have Not Articulated An Unexhausted Rehabilitation Act Claim.**

The Mangums' task in the wake of the October 2011 order was to identify a claim
arising under the Rehabilitation Act that they either properly exhausted or that did not
require exhaustion.  The October 2011 order observed that the Mangums had done little
to explain their 504 claim:

> [The] Mangums have not articulated a Section 504 claim in either their
> operative complaint or their submissions supporting these summary
> judgment motions.  They mention Section 504, but never explain how it
> applies to I.M. or how it supports any particular form of relief.

Oct. 2011 ord. at 16.

Given a second chance to articulate a Section 504 claim, the Mangums have not
done much more than they did the first time.  Their complaint describes I.M.'s disabilities
and decries the District's failure to remedy them, but those allegations are largely
indistinguishable from the ones that supported their IDEA claim.  They do not, for
example, cite any education regulation implementing Section 504 or explain how the
District violated it.  *See Mark H.*, 513 F.3d at 935-39 (describing limits on implied right
of action based on violation of Section 504 regulations).  They do not point to an action
that the District took that allegedly violated Section 504 but not the IDEA.  They do not
demonstrate that I.M.'s circumstances are among the "very limited instances" where a
claim for denial of a free adequate public education arises from Section 504 and its
implementing regulations, rather than the IDEA.  *See C.O. v. Portland Pub. Schools*, 679
F.3d 1162, 1169 (9th Cir. 2012).  The court granted summary judgment against their
IDEA claims because they were either unexhausted or (within the narrow window during
which the Mangums might have exhausted their claims) legally inadequate.  Their most

ORDER – 6

1    recent complaint merely places a Section 504 label on those IDEA allegations.  Those

2    claims fail for the same reason as the IDEA claims: they are either unexhausted or legally

3    insufficient.

4            In addition, the relief that the Mangums seek in their most recent complaint does

5    not suffice to take them beyond the IDEA's exhaustion requirement.  Their request for

6    injunctive relief is no more than a request to modify I.M.'s educational placement, a form

7    of relief that the IDEA provides.[1]  They request monetary damages, but they explain only

8    one aspect of that request.  They contend that the District has "caused severe and

9    permanent injury to I.M.'s future earnings capacity" and seek money damages.  Dkt. # 49

10   at 9.  Unlike Section 504, the IDEA does not permit a plaintiff to recover compensatory

11   damages, but the IDEA's exhaustion requirement applies even to Section 504 damage

12   claims if those damages are premised on the denial of a free adequate public education.

13   The Mangums claim that because the District has denied their son a free adequate public

14   education, he has suffered a loss of earning capacity.  That is a request for damages

15   "premised on a denial of a FAPE," *Payne*, 653 F.3d at 875, and it is thus subject to the

16   IDEA's exhaustion requirement.

17           In summary, the court grants summary judgment against the Mangums'

18   Rehabilitation Act and ADA claims because they neither articulate the violation of a right

19   beyond the scope of the IDEA nor seek relief that the IDEA does not provide.  Under

20   these circumstances, their Section 504 and ADA claims fare no better than their IDEA

21   claims.  This ruling makes it unnecessary to address the District's contention that the

22   Mangums cannot, as a matter of law, demonstrate that the District acted with the

23

24   _____

25   [1] The Mangums pair their request for injunctive relief with a request for declaratory relief, but
     neither the IDEA nor the Rehabilitation Act provide for declaratory relief.  That is the function
26   of the Declaratory Judgment Act (28 U.S.C. § 2201), which applies to virtually any claim in
     federal court.  A request for declaratory judgment does not help a litigant avoid the IDEA's
27   exhaustion requirement.

28   ORDER – 7

1   "deliberate indifference" to I.M.'s rights that Section 504 and Title II require.  *See*

2   *Duvall*, 260 F.3d at 1138 (stating deliberate indifference requirement).

3   **D.    The Mangums' WLAD Claim Survives Summary Judgment.**

4          None of the foregoing analysis applies to the Mangums' WLAD claim.  The

5   IDEA's exhaustion requirement applies only to claims arising under federal law.  20

6   U.S.C. § 1415(l).  Washington law, as expressed in regulations implementing the IDEA

7   in the State,[2] imposes essentially the same exhaustion requirement as the IDEA, one that

8   applies only to claims arising under federal law.  WAC § 392-172A-05115(5).

9          No one, including the Mangums, has paid much attention to their WLAD claim.

10  The Mangums brought no WLAD claim when they first sued.  Their original complaint,

11  entitled "Denial of FAPE Complaint," focused on the IDEA, mentioned Section 504

12  accommodations a few times, and included one or two bare references to the ADA.  The

13  Mangums mentioned the WLAD for the first time in their first amended complaint in July

14  2011, including no more than two generic citations to the entire WLAD.  Dkt. # 31 at

15  ¶¶ 1, 10.  They did not mention the WLAD in opposition to the District's previous

16  summary judgment motion or in their motion for reconsideration of the court's October

17  2011 order.  The October 2011 order did not mention the Mangums' WLAD claim,

18  perhaps because the sole reference to the WLAD in the summary judgment record was a

19  single bare citation to the entire WLAD in which the Mangums purported to incorporate

20  the entire act into their summary judgment motion.  Dkt. # 41-1 at 13.  That was as

21  illuminating as their attempt, on the same page, to incorporate all "[p]ublished case law

22  from the Federal Courts" by reference.  *Id.*

23         Plaintiffs included a WLAD claim again in their second amended complaint.  This

24  time, they provided slightly more detail.  They pointed out, for example, that the WLAD

25

26  [2] Washington has implemented the IDEA by statute and regulation.  RCW Ch. 28A.155; WAC
    Ch. 392-172A.

27

28  ORDER – 8

1  requires the District to reasonably accommodate their son's disabilities.  Dkt. # 49 at

2  ¶¶ 42, 44.

3          Whether intentionally or by accident, the District has consistently ignored the

4  Mangums' WLAD claim.  It has never so much as mentioned it.  That has remained the

5  case even after the Mangums' second amended complaint, and after they alerted the

6  District (and the court) that they believed they should survive summary judgment because

7  the District's alleged "failure to provide _any_ accommodations for I.M.'s asthma, ADD

8  and dyscalculia violate I.M.'s civil rights under the ADA, Section 504, and the WLAD."

9  Dkt. # 63 at 4 (emphasis in original).

10         Although the Mangums have done little to advance their WLAD claim, the

11 District has done less to stop them.  Under these circumstances, the court cannot ignore

12 that the Mangums are at least attempting to state a viable WLAD claim.

13         Although the Mangums have never cited a specific provision of the WLAD, there

14 is no question that the WLAD prohibits discrimination on the basis of disability.  RCW

15 § 49.60.030(1); _see also_ RCW 49.60.040(7) (defining "disability").  Among those

16 prohibitions is a ban on discrimination in public facilities.  RCW § 49.60.030(b).  Public

17 schools are public facilities for purposes of the WLAD.  RCW § 49.60.040(2); WAC

18 § 162-28-030.  The Mangums' two most recent complaints have cited two subparts of the

19 Washington Administrative Code with regulations pertaining solely to the WLAD's ban

20 on discrimination in public facilities.  Dkt. # 31 at ¶¶ 1, 10; Dkt. # 49 at ¶ 1 & p.10.

21         The relationship between the IDEA and the WLAD is analogous to the

22 relationship between the IDEA and Section 504 of the Rehabilitation Act or Title II of the

23 ADA.  One body of law imposes a host of detailed substantive and procedural

24 requirements applying specifically to education of children with disabilities, whereas the

25 other body of law imposes general restrictions on discrimination against the disabled that

26 also apply in public schools.  In contrast to a plaintiff claiming a Section 504 or Title II

27

28 ORDER – 9

violation, a WLAD plaintiff does not need to prove intentional discrimination or deliberate indifference to his rights.  *Duvall*, 260 F.3d at 1135 n.10.

Unlike the United States Congress, Washington's legislature has not subjected education-based disability discrimination claims arising under its general antidiscrimination law (the WLAD) to an exhaustion requirement that incorporates the IDEA.  There is reason to doubt that the Washington legislature would prefer to require the exhaustion of administrative remedies for an IDEA claim while permitting plaintiffs to avoid the administrative process entirely by the simple expedient of invoking the WLAD.  On the other hand, Washington regulations expressly recognize that a violation of the IDEA, its Washington counterpart, and a host of other antidiscrimination laws can be evidence of a violation of the WLAD's prohibition on discrimination in public facilities.  WAC § 162-26-120(1) ("Failure to meet requirements of related law protecting persons with disabilities in places of public accommodation may be evidence of an unfair practice under RCW 49.60.215."); WAC § 162-26-120(2) (stating that "[r]elated law" includes the IDEA and RCW Ch. 28A.13, the predecessor to RCW Ch. 28A.155).

The court does not rule on whether an exhaustion analysis similar to the one applicable to Rehabilitation Act and ADA claims applies to claims invoking the WLAD. The District's summary judgment motion does not acknowledge the Mangums' WLAD claim, much less provide any reason that the court should grant summary judgment against it.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS the District's motion for summary judgment (Dkt. # 62) in part and DENIES it in part.  The only claim remaining in this lawsuit is the Mangums' assertion that the District violated the WLAD.

If the Mangums choose to pursue their WLAD claim, the court will resolve it at a bench trial beginning March 18, 2013.  The parties shall file a joint pretrial order in

ORDER – 10

accordance with Local Rules W.D. Wash. LCR 16(e) no later than March 8, 2013.  They shall file motions in limine in accordance with LCR 7(d)(4) no later than February 28, 2013 and shall note them for consideration on March 15, 2013.

DATED this 29th day of January, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11